IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD HILL and PEGGY HILL, | : | |
| | : | |
| Plaintiffs, | : | No.  06-CV-2363 |
| | : | |
| v. | : | Judge Jones |
| | : | |
| BOROUGH OF COALDALE, <u>et al.</u>, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**April 11, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court is a Motion to Dismiss Plaintiffs' Complaint ("the Motion") filed by two of the Defendants in the above-captioned case, the Borough of Coaldale ("Borough") and Shawn Nihen ("Nihen"), on May 19, 2006.  (Rec. Doc. 1-4).  For the reasons that follow, the Motion shall be denied.

**<u>PROCEDURAL HISTORY</u>:**

On January 24, 2006, Plaintiffs Ronald and Peggy Hill (collectively, "Plaintiffs") filed a six-count Complaint in the United States District Court for the Eastern District of Pennsylvania.  Named as Defendants are the Borough; Nihen, both individually and in his official capacity as Police Chief of the Borough; Gregory Altenbach; Shawn and Annette Becker; and Christopher Frets.  (Rec. Doc.

1

1-2).

On December 11, 2006, the District Court for the Eastern District of Pennsylvania transferred this action to this Court pursuant to 28 U.S.C. § 1406(a) because venue was improper in the Eastern District. (Rec. Doc. 2-3).

However, prior to this action's transfer, on May 19, 2006, the Borough and Nihen filed the instant Motion, which remains pending. Although no Reply Brief has been filed to date, the time in which to do so has long since passed, and the Motion is, therefore, ripe for disposition.

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).

**FACTUAL BACKGROUND:**

As required by the aforesaid standard of review, for the purposes of our discussion here, we accept as true all of the allegations set forth in Plaintiffs' Complaint. (Rec. Doc. 1-2). Accordingly, the following recitation of the facts is taken therefrom.

On or about January 23, 2004, James P. Hill ("Hill"), then seventeen (17) years of age, was visiting Gregory Altenbach ("Altenbach"), then eighteen (18) years of age, at Altenbach's residence, a home rented by Altenbach's mother, Annette Becker ("Mrs. Becker"), and stepfather, Shawn Becker ("Mr. Becker"). Hill was visiting the home, as he had on prior occasions, because he and Altenbach were friends.

At the time of Hill's January 23, 2004 visit, Altenbach was approximately one (1) month beyond his eighteenth birthday, at which time he had either received a .22 caliber semi-automatic rifle ("rifle") as a birthday gift from his mother and stepfather (collectively, "the Beckers") or had purchased it himself, with the Beckers' knowledge and agreement. Whatever the exact circumstances of the rifle's acquisition, the Beckers knew of Altenbach's possession of the rifle, and, accordingly, the rifle's presence in their home. Plaintiffs allege that the presence

of the rifle in the Beckers' home and the Beckers' knowledge thereof were problematic because on or about January 23, 2004, Mr. Becker was on probation or parole and was not permitted to have firearms in his residence.

Plaintiffs further allege that the presence of the firearm in the Beckers' home was particularly troublesome because the Police Chief of Coaldale at that time, Nihen, knew of the rifle and the condition(s) of Mr. Becker's parole or probation that prohibited the presence of such weapons in the Becker home, and yet failed to take action thereupon.  Nihen is alleged to have known of Altenbach's ownership of the rifle, and its presence in the Beckers' home, as a result of his close friendship with Altenbach, who often visited the Police Chief's office.  In fact, Plaintiffs allege that prior to Hill's January 23, 2004 visit to the Becker home, Nihen also knew that Altenbach had engaged in criminal conduct, but had "overlooked, disregarded, or condoned such actions . . . , leading Defendant Altenbach to conclude that he was 'invincible' or 'untouchable' by legal authorities."  (Rec. Doc. 1-2, ¶ 22).

During Hill's January 23, 2004 visit, he and Altenbach spent at least a portion of their time in Altenbach's bedroom with Christopher Frets ("Frets"). While therein, Altenbach picked up the aforementioned rifle, which was loaded and leaning into a corner in the room, and approached Hill, who was seated on the

other side of the room. Although Hill had on several occasions requested to look at the rifle, Altenbach refused such requests, and then approached Hill with the rifle pointed at Hill. Hill responded by asking that Altenbach not point the gun at him. However, shortly thereafter, Altenbach discharged the rifle, shooting Hill in the forehead.

As a result of the gunshot, Hill was severely wounded and allegedly in great pain. He was taken to the Lehigh Valley Hospital in serious condition, where he died on January 25, 2004, two (2) days after the shooting, despite the medical staff's efforts to save his life. At some time thereafter, the Lehigh County Coroner ("Coroner") determined that Hill (also "Decedent") died as a result of the gunshot wound to his head, and ruled the manner of death a homicide.

However, for some period following Hill's death, a conspiracy covered up the actual events of January 23, 2004. Two alleged conspiracy members were Altenbach and Frets. In furtherance of said conspiracy, Altenbach stated, on several occasions during interviews and discussions with Nihen and Frets, that Hill shot himself, and allegedly convinced Frets to say the same when he spoke to the police and others.

Further, Nihen is alleged to have participated in the conspiracy by failing to adequately investigate Hill's death and by treating the shooting as a suicide,

despite the Coroner's findings. Indeed, in the course of his investigation of Hill's death, Nihen is alleged to have gathered numerous items of evidence from the scene of the shooting, including the rifle, but to have failed to have the evidence forensically tested or otherwise analyzed in any manner. Nihen is also alleged to have conspired with the Beckers to help Altenbach avoid criminal responsibility for the shooting by not investigating the circumstances under which Altenbach had possession of the rifle and by not examining the Beckers' failure to properly supervise and monitor Altenbach's possession and use of the rifle.

Because the conspiracy was initially successful in portraying Hill's death as a suicide, his parents ("the Hills") "lived with the haunting spectre that their son had committed suicide, and suffered the 'shunning' social atmosphere and personal mental trauma related to a teen suicide." (Rec. Doc. 1-2, ¶ 38). Further, the Hills allege that the conspiracy damaged Decedent's "standing, reputation, and memory . . . in the community." (Rec. Doc. 1-2, ¶ 39).

Moreover, the Hills maintain that Decedent's case would have been stagnant or closed, and the conspiracy members' portrayal of the shooting final, if Coaldale Police Sergeant Melissa Johnson ("Sergeant Johnson") had not, of her own accord, undertaken an investigation into the shooting almost six (6) months after Hill's

death.[1]  Plaintiffs further allege that Sergeant Johnson was only able to conduct her investigation because Nihen himself had become the subject of an investigation involving an illegal transfer of a firearm.[2]  Following Sergeant Johnson's investigation, Altenbach pleaded guilty to manslaughter for his role in Hill's death.

Finally, Plaintiffs make additional allegations in an attempt to put the above circumstances in context.  First, Plaintiffs allege that prior to the Hill shooting, the Borough should have known that it needed to better monitor its Police Chiefs because a previous Police Chief, James Strauss, had resigned in the wake of a settlement of a sexual harassment suit.  Second, they allege that Nihen not only had a friendship with Altenbach, but also a relationship with the extended Becker family, and the said relationship caused him to oppose taking aggressive actions against those members of the Becker family involved in the trafficking of illegal drugs.  Ironically, Plaintiffs also allege that, subsequently, other local police officers were criminally charged with deliberately planting illegal drugs in the homes of some Becker family members in order to prosecute them and obtain

---

[1] Nihen's failure to adequately investigate is alleged to have continued during this time despite written notice of a potential lawsuit from Plaintiffs.

[2] Plaintiffs further allege that Nihen ultimately pleaded guilty and served time in prison for this offense.

convictions.

**DISCUSSION:**

As Nihen and the Borough's Motion seeks to have Plaintiffs' Complaint (doc. 1-2) dismissed as to them in its entirety, we review briefly the claims Plaintiffs have outlined therein. Counts I through IV involve pendent state claims: Count I is a survival action "based on the provisions of the Judiciary Act of July 9, 1976, P.L. 586, 42 Pa. C.S.A. § 8302 and § 5524 and the Pennsylvania Probate Estates and Fiduciary Code, Act of June 30, 1972, P.L. 508, 20 Pa. C.S.A. § 3373;" Count II is a wrongful death action grounded in the "Wrongful Death provisions of the Judiciary Act of July 9, 1976, P.L. 586, 42 Pa. C.S.A. § 8302 and § 5524;" Count III is an intentional infliction of emotional distress ("IIED") claim; and Count IV is a negligent infliction of emotional distress ("NIED") claim. Although Count V is not labeled as such, both Counts V and VI appear to be, at least in part, 42 U.S.C. § 1983 ("§ 1983") claims: Count V is a negligence and negligent supervision claim, which also alleges that the negligent development, implementation, and carrying out of the municipality's policies "amounted to a deprivation of life and liberty actionable under 42 U.S.C. § 1983" (doc. 1-2 at 21), and Count VI is a claim for Defendants' alleged violations of the Fourth and Fourteenth Amendment rights of the Hills and Decedent.

In their Brief in Support of the instant Motion (doc. 1-4), the Borough and Nihen (collectively, "Defendants") attack Plaintiffs' claims in pairs. For example, Defendants first address Counts I and II, which, as relevant here, name only Defendant Nihen. Defendants argue that Counts I and II should be dismissed, as to Nihen, pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541, et seq., because it affords immunity to municipalities and their employees. (Rec. Doc. 1-4 at 8-10). Next, Defendants argue that Counts III and IV should be dismissed because under the PSTCA, emotional damages cannot be recovered against a locality or its employees. (Rec. Doc. 1-4 at 11-13). In the alternative, Defendants argue that Counts III and IV should be dismissed because Plaintiffs have not pled sufficiently to satisfy the elements of these torts. (Rec. Doc. 1-4 at 12-14). Finally, Defendants argue that Counts V and VI should be dismissed as "state actors have no affirmative obligation to protect citizens from injuries caused by others and themselves" and neither of the exceptions to this general rule apply here. (Rec. Doc. 1-4 at 14-23).

In their Brief in Opposition to the Motion (doc. 1-5), Plaintiffs assert that the Motion should be denied in all respects. As to Counts I and II, Plaintiffs argue that the PSTCA does not bar their claims against Nihen because at least one (1) exception to the PSTCA applies. (Rec. Doc. 1-5 at 6-8). With regard to Counts III

and IV, Plaintiffs make several counterarguments.  First, they argue that the PSTCA does not apply.  In the alternative, they argue that even if it does, the PSTCA "specifically allows for compensation for pain and suffering, where, as here, the claimant ultimately dies, or where the claimant suffers the permanent loss of a bodily function or disfigurement."  (Rec. Doc. 1-5 at 9).  Next, they argue that their Complaint is sufficiently well-pled to survive the instant Motion.  (Rec. Doc. 1-5 at 10-11).  Finally, as to Counts V and VI, Plaintiffs argue that the allegations contained within their Complaint are adequate to prevent dismissal 1) because of the "state created danger" exception to the general rule that state actors have no affirmative duty to protect citizens; and 2) because their allegations are sufficiently pled to support the imposition of liability on the Borough "consistent with the principles of Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978)" (emphasis omitted).  (Rec. Doc. 1-5 at 11-16).

In the interest of clarity and consistency, we address the viability of Plaintiffs' claims in the order in which the parties argued thereto.

Accordingly, we begin with Counts I and II, Plaintiffs' survival and wrongful death claims against Nihen.  As Plaintiffs note, the PSTCA's grant of immunity to municipalities and their employees is subject to certain exceptions, including those enumerated in 42 Pa. C.S. § 8542 and those circumstances in

which "the court determines that the acts were a result of 'willful misconduct,'" Gallaher v. Goldsmith, 213 F. Supp. 2d 496, 497 (E.D. Pa. 2002) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).  "Willful misconduct in this context has the same meaning as the term intentional tort."  Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (citations and internal quotations omitted).  Because Plaintiffs have alleged that Nihen's acts were "careless, negligent, reckless, willful and wanton" (doc. 1-2 at 15), and have alleged numerous factual allegations in support thereof, Counts I and II withstand the instant Motion.  Indeed, at this juncture, we cannot determine whether Nihen's actions constituted "willful misconduct" sufficient to render him beyond the PSTCA's protection because, as Plaintiffs assert, such a determination will require a fact-intensive inquiry more properly undertaken by this Court following a motion for summary judgment or by a jury.[3]

Next, we consider Counts III and IV, Plaintiffs' IIED and NIED claims against the Borough and Nihen.  In support of their Motion to dismiss these claims,

---

[3] Moreover, as Plaintiffs have argued, the very fact that they sued Nihen both individually and in his official capacity may be sufficient to render him outside of the PSTCA's protection.  See 42 Pa. C.S. § 8545 ("an employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter" (emphasis added)); Holloway v. Lam Brechtse, 279 F. Supp. 2d 613, 615 ("[t]he immunity provided by § 8541 also extends to municipal officers acting in their official capacities." (emphasis added)).

Defendants first argue that damages for emotional distress are not recoverable under the PSTCA, citing 42 Pa. C.S. § 8553(c), which, in relevant part, limits the damages recoverable under the PSTCA to:

> (2) Pain and suffering in the following instances:
>
> (i)  death;
> (ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

42 Pa. C.S. § 8553(c)(2).  Plaintiffs counter this initial argument with two arguments: 1) the PSTCA's limitations on recovery do not apply because of Nihen's "willful misconduct;" and 2) even if the PSTCA applies, it allows recovery for emotional suffering, in light of 42 Pa. C.S. § 8553(c)(2)'s plain language and courts' interpretation thereof.  As we indicated above, determining whether the PSTCA applies to Nihen's actions would be premature at this time, and, thus, we decline to do so.  However, even assuming arguendo that the PSTCA applies, our preliminary reading of the PSTCA and <u>Walsh v. City of Philadelphia</u>, 585 A.2d 445 (Pa. 1991), appears to provide sufficient support for Plaintiffs' argument as to render us uncomfortable with their dismissal at this time.

Thus, we are left with Defendants' second argument as to Counts III and IV: that Plaintiffs "have failed as a matter of law to demonstrate the existence of the

required elements of the tort[s]." (Rec. Doc. 1-4 at 12-13).  We find this argument unpersuasive because the detailed averments as to the circumstances that led to the filing of the instant action, the liberal notice-pleading standard adopted by the Federal Rules of Civil Procedure, and the parties' apparent agreement on the elements of IIED and NIED lead us to conclude that Plaintiffs may be able to prove a set of facts that would enable recovery on either or both of these claims.    Next, we turn to Plaintiffs' § 1983 claims: Count V's claim for negligence and negligent supervision which allegedly amounted to a deprivation of life and liberty protected by the Constitution, Count VI's claim for the alleged violation of the Fourth and Fourteenth Amendment rights of the Hills and Decedent.  In arguing their respective positions, both parties recognize that the viability of these claims will depend upon consideration of the "state created danger" exception to the general rule that state actors have no affirmative duty to protect citizens from injuries caused by themselves or others, see, e.g., DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989), and the principles outlined in Monell, 436 U.S. 658, and its progeny.  In light of the substantial burden which rests upon Plaintiffs in this context, we understand Defendants' eagerness to request dismissal of Counts V and VI.  However, as we concluded above, such dismissal would be both premature and inappropriate at this time because Plaintiffs have sufficiently pled

these claims to withstand this Rule 12(b)(6) Motion.

Finally, we consider the punitive damages claim that Plaintiffs asserted against the Borough. As Defendants correctly assert (doc. 1-4 at 23), and Plaintiffs concede (doc. 1-5 at 6), this claim against the Borough is not viable in light of the PSTCA. Accordingly, Plaintiffs have indicated their willingness to withdraw the punitive damages claim against the Borough, and we will so order.

Thus, Defendants' Motion will be denied in its entirety.[4]

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss Plaintiffs' Complaint (doc. 1-4) is **DENIED**.

2. Plaintiffs' punitive damages claim against the Borough of Coaldale is deemed **WITHDRAWN**.

s/ John E. Jones III  
John E. Jones III  
United States District Judge

---

[4] We are cognizant that, in the event Plaintiffs' claims were not dismissed, a portion of Defendants' Motion requested an Order requiring a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. However, despite our conclusion that all of Plaintiffs' claims remain viable at this time, we will also deny this portion of the Motion because, as Plaintiffs have noted, the very nature of Defendants' Brief in Support of the Motion makes clear that Plaintiffs' Complaint is neither vague nor ambiguous.